OPINION
{¶ 1} Plaintiffs-appellants, Michael and Theresa Fullenkamp ("Fullenkamps"), appeal the judgment of the Mercer County Court of Common Pleas directing a verdict in favor of defendant-appellee, Homan, Inc. ("Homan"), on the Fullenkamps' negligence claims. Because the evidence construed most favorably in the Fullenkamps' favor failed to establish that Homan did not perform the construction project in a workmanlike manner, we affirm.
 {¶ 2} The Fullenkamps operate a dairy farm in Mercer County, Ohio. In September 2000, the Fullenkamps hired Homan to build a dairy barn and manure collection system on his farm. The collection system included a number of underground pipes that, when joined together, led from the dairy barn to a nearby reception pit.
 {¶ 3} The Fullenkamps began using the dairy barn and collection system in January 2001. But, sometime later, small holes developed in the dairy barn roof. Moreover, the non-watertight joints between the underground pipes allowed excess water to enter the collection system, thereby causing the Fullenkamps' storage capacity to fill too quickly. The same joints apparently also allowed manure to exit the collection system.
 {¶ 4} In May and August 2002, the Ohio Environmental Protection Agency ("Ohio EPA") determined manure from the Fullenkamps' farm polluted a tributary of the Wabash River. As a result, the Ohio EPA fined the Fullenkamps. The Fullenkamps subsequently hired a different contractor to line the underground pipes and rectify the problem.
 {¶ 5} The Fullenkamps then filed suit against Homan. The Fullenkamps alleged Homan acted negligently by failing to build the dairy barn roof and the collection system in a workmanlike manner. Specifically, the Fullenkamps noted Homan did not install lining material under the dairy barn roof or use watertight joints between the underground pipes.
 {¶ 6} The matter proceeded to a jury trial. Homan moved for a directed verdict at the close of the Fullenkamps' case-in-chief. Homan argued the Fullenkamps did not present any evidence establishing the applicable standard of care as a basis for proving a breach of the duty of care. Homan also argued the Fullenkamps failed to join a necessary and indispensable party under Civ.R. 19. After hearing the parties' arguments, the trial court found the Fullenkamps "failed in their burden and upon the determinative issue of [Homan's] negligence." Consequently, the trial court granted a directed verdict to Homan.
 {¶ 7} It is from this decision that the Fullenkamps appeal and set forth one assignment of error. Additionally, Homan sets forth one cross-assignment of error.
 ASSIGNMENT OF ERROR The trial court erred as a matter of law by grantingdefendant's motion for directed verdict in that plaintiff hadpresented evidence of substantial probative value that defendantwas negligent.
 {¶ 8} In their sole assignment of error, the Fullenkamps argue they presented evidence of substantial probative value that Homan acted negligently by failing to build the dairy barn roof and the collection system in a workmanlike manner. From this premise, the Fullenkamps conclude the trial court erred in directing a verdict in Homan's favor.
 {¶ 9} Civ.R. 50(A)(4) provides a trial court shall grant a party's motion for directed verdict if, after construing the evidence most strongly in favor of the non-moving party, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to [the non-moving party]." In making this determination, the trial court must decide whether the non-moving party presented evidence of substantial probative value in support of its claim. Good YearTire Rubber Co. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512,2002-Ohio-2842, 769 N.E.2d 835 at ¶ 3, citing Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 69,430 N.E.2d 935.
 {¶ 10} A motion for a directed verdict presents a question of law. Good Year Tire Rubber at ¶ 4, citing O'Day v. Webb,29 Ohio St.2d 215, 280 N.E.2d 896, paragraph three of the syllabus;Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116, 119,671 N.E.2d 252. As such, we review the trial court's decision to grant or deny the motion de novo. Id.
 {¶ 11} The common law imposes a duty on a builder to perform in a workmanlike manner. Mitchem v. Johnson (1966),7 Ohio St.2d 66, 218 N.E.2d 594, paragraph three of the syllabus;Barton v. Ellis (1986), 34 Ohio App.3d 251, 253, 518 N.E.2d 18. This court has previously defined "`[w]orkmanlike manner' [as] a standard that requires a [builder] to act reasonably and to exercise that degree of care which a member of the construction trade in good standing in that community would exercise under the same or similar circumstances." Eberly v. Barth, 3d Dist. No. 4-03-02, 2003-Ohio-2563 at ¶ 5, citing Jenkins v. Huebner, 3d Dist. No. 15-01-12, 2002-Ohio-698, citing 2 Restatement of Law 2d, Torts (1965) 73, Section 299A; Huston v. Konieczny (1990),52 Ohio St.3d 214, 217, 556 N.E.2d 505; see, also, Ohio ValleyBank v. Copley (1997), 121 Ohio App.3d 197, 204-205,699 N.E.2d 540 (applying the standard in determining whether the evidence supported the finding that a builder did not build a home in a workmanlike manner).
 {¶ 12} In many cases, a plaintiff must present expert testimony to prove a builder deviated from common standards of workmanship and failed to exercise ordinary care. Floyd v.United Home Improvement Center (1997), 119 Ohio App.3d 716,721-722, 696 N.E.2d 254. But a plaintiff need not do so when the issue is not highly technical or scientific in nature, or beyond the experience or knowledge of the average trier of fact. Id.
 {¶ 13} Homan concedes in its brief that "all the evidence * * * was presentd [sic] by means of expert testimony." Thus, instead of arguing expert testimony was warranted, Homan argues the Fullenkamps' expert witnesses did not present any "evidence whatsoever as to any standard of care or that Homan breached any such duty of ordinary care."
 {¶ 14} The Fullenkamps argue in opposition that they presented evidence sufficient to establish Homan did not build the dairy barn roof in a workmanlike manner. The Fullenkamps rely on Michael's own testimony to establish small holes developed in the roof. The Fullenkamps also point to the testimony of Brian Bubp ("Bubp"), the president of the company that supplied the roof materials to Homan.
 {¶ 15} At trial, Bubp testified Homan did not install a liner under the dairy barn roof. Bubp also testified the use of a liner "is done" and is "a good thing to do" because animal waste can produce corrosive fumes. But Bubp further testified he installed a liner in "very few" instances and the purchaser would make the ultimate decision whether the builder should do so.
 {¶ 16} Noticeably absent from Michael Fullenkamp's and Bubp's testimony is any discussion of the applicable standard of care or of Homan's breach of that standard. In particular, Bubp did not testify regarding the industry standards, the course of action Homan should have taken, or whether Homan acted negligently when it failed to install a liner under the dairy barn roof. Therefore, we find, based upon the evidence in the record and construing the evidence most strongly in the Fullenkamps' favor, reasonable minds can only conclude Homan did not breach its duty to build the dairy barn roof in a workmanlike manner.
 {¶ 17} The Fullenkamps also argue they presented evidence sufficient to establish Homan did not build the collection system in a workmanlike manner. In support, the Fullenkamps cite testimony of the following: the president of the company that sold the pipe to Homan, Gene Baughman; two certified public engineers, Steven Carter ("Carter") and Denise McClanahan ("McClanahan"); and one "engineer in training," Melinda Harris.
 {¶ 18} The four witnesses' testimonies collectively establish: "some" regulations exist regarding the construction of manure collection systems;[1] Homan used water-tight pipe; the pipe is used for different purposes, including field drainage; Homan used non-watertight joints; the use of non-watertight joints in a municipal sewer system is inappropriate; the use of non-watertight joints creates the potential for "infiltration" and "exfiltration"; Homan's use of non-watertight joints allowed water to enter the collection system; and the water entering the non-watertight joints caused the Fullenkamps' storage capacity to fill too quickly.
 {¶ 19} Notably, only Carter had prior experience in designing and building farms and manure collection systems. Carter testified he specifies watertight pipe and watertight joints when building a collection system. But Carter did not testify that Homan should have done so and, in fact, stated Homan's use of the pipe itself was not inappropriate or unusual.
 {¶ 20} Like Michael Fullenkamp and Bubp, the four additional witnesses testified in general, non-descript terms. The four witnesses did not address the applicable standard of care governing the construction of a collection system like the one at issue in this case. Nor did they establish whether Homan breached that standard. Therefore, we find, as did the trial court, that even when construing the evidence most strongly in the Fullenkamps' favor reasonable minds could only conclude Homan did not breach its duty to build the collection system in a workmanlike manner.
 {¶ 21} In sum, we are unable to say the Fullenkamps presented evidence of a substantial probative value that Homan failed to build the dairy barn roof or the collection system in a workmanlike manner. Although the Fullenkamps demonstrated that some problems exist with the roof and the collection system, that alone is insufficient to prove breach of the duty to build in a workmanlike manner without also showing that those problems resulted from Homan's failure to exercise the requisite degree of care. "The fundamental issue concerns, not what was done by the defendants, but whether what was done was in accordance with certain standards of workmanship. These standards are not matters which are within the common knowledge but must be in some manner established by evidence." Schlachter v. Davis (May 26, 1978), 3d Dist. No. 4-77-12 at 5. Given the foregoing, we conclude the trial court did not err when it directed a verdict in Homan's favor on the Fullenkamps' negligence claims.
 {¶ 22} The Fullenkamps' sole assignment of error is, therefore, overruled.
 CROSS-ASSIGNMENT OF ERROR The trial court erred in not sustaining the defendant's motionfor a directed verdict on the issue of failure to join anecessary party and whether the Fullenkamps were the real partyin interest.
 {¶ 23} Homan raises a cross-assignment of error under R.C.2505.22. In doing so, Homan seeks to prevent this court from reversing the trial court's decision to grant a directed verdict. Homan argues the trial court should have granted a directed verdict for the additional reason that the Fullenkamps failed to join a necessary and indispensable party under Civ.R. 19.
 {¶ 24} We may consider an appellee's cross-assignment of error "only when necessary to prevent a reversal of the judgment under review." Parton v. Weilnau (1959), 169 Ohio St. 145,158 N.E.2d 719, paragraph seven of the syllabus. Since we find the Fullenkamps' assignment of error lacks merit, Homan's cross-assignment of error does not prevent a reversal. Therefore, Homan's cross-assignment of error is moot.
 {¶ 25} Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Bryant, P.J. and Shaw, J., concurs.
[1] Although McClanahan testified she knew "some" regulations exist regarding the construction of collection systems like the one at issue, she also testified she did not have any knowledge of the particular regulations. None of the other witnesses discussed those regulations.